Antone **TEIXEIRA**, Glen A. Teixeira, and Mabel Jane Teixeira, individually and as Guardian ad Litem for Glen A. Teixeira, Appellants,

v.

**GLOBE INDEMNITY COMPANY,**
Appellee.

No. 19450.

United States Court of Appeals
Ninth Circuit.

Aug. 6, 1965.

See also D.C., 230 F.Supp. 444.

Ambrose J. Rosehill, Honolulu, Hawaii, for appellants.

Burnam H. Greeley, Robertson, Castle & Anthony, Honolulu, Hawaii, for appellee.

Before BARNES, JERTBERG and MERRILL, Circuit Judges.

JERTBERG, Circuit Judge.

Before us is an appeal from a summary judgment in a diversity action entered in favor of Globe Indemnity Company, plaintiff in the District Court and appellee here, hereinafter called "Globe", in a declaratory judgment action brought by Globe to determine the parties' rights thereto under an automobile insurance policy issued to Antone Teixeira, one of the defendants below and one of the ap-

pellants here, hereinafter called "Insured."

The facts are undisputed.

On January 5, 1961 Globe issued to insured a "Family Automobile Combination Policy" effective for one year. The policy provides that Globe will pay, up to the limits of the policy, all sums for which the Insured would become legally liable for bodily injury, including death, and for property damage for which the Insured would become legally liable, "arising out of the ownership, maintenance or use of the owned automobile or any non-owned automobile"; that Globe will pay, up to the limits of the policy, all medical expenses of persons injured while occupying either the owned automobile or a non-owned automobile, and Globe will defend any actions seeking damages payable under the terms of the policy.

The policy lists a 1957 Packard and a 1942 Ford Jeep under the heading "Description of Owned Automobile or Trailer" and recites that the total number of private passenger, farm and utility automobiles owned on the effective date of the policy by the Insured was "Two".

The policy defines:

(1) An owned automobile as "a private passenger, farm or utility automobile or trailer owned by the named Insured, and includes a temporary substitute automobile;"

(2) A non-owned automobile as "an automobile or trailer not owned by or furnished for the regular use of either the named Insured or any relative, other than a temporary substitute automobile;" and

(3) A temporary substitute automobile as "any automobile or trailer not owned by the named Insured while temporarily used as a substitute for the owned automobile or trailer when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction."

The policy provides that: "Persons insured" means

(a) with respect to the owned automobile,

1) the named Insured and any resident of the same household;

2) any other person using such automobile, provided the actual use thereof is with the permission of the named Insured;

(b) with respect to non-owned automobile,

1) the named Insured;

2) any relative, but only with respect to a private passenger automobile or trailer, provided the actual use thereof is with the permission of the owner.

Under "Definitions",

"Named Insured" means the named insured in the policy and also includes the spouse, if a resident of the same household.

"Relative" means a relative of the named insured who is a resident of the same household.

On November 3, 1961, Glen Albert Teixeira, one of the defendants and appellants, a minor stepson of the Insured and a minor son of his wife, Mabel Jane Teixeira, also one of the defendants and appellants, was driving a certain 1960 Corvair automobile and an accident occurred resulting in injuries to certain persons and in the death of another person.

In April 1961 one William Sylva, unrelated to the Teixeiras, came to live with them and brought with him the Corvair automobile which was later involved in the accident, and which, at the time of the accident, was being driven by the minor son above named. Sylva had purchased the Corvair automobile on a time payment plan from General Motors Acceptance Corporation and was at all times here relevant the registered owner of the same. In June 1961 Sylva left Hawaii to work on board ship and had not been seen or heard from by any member of the Teixeira family up to the

time of the hearing in the District Court. On Sylva's departure from Hawaii, the Corvair was left with Mrs. Teixeira for the use of all members of the Teixeira family. From the time Sylva left Hawaii until the date of the accident it was used daily by Mabel Jane Teixeira, her son Glen, and her daughter Judy, and once or twice by the named Insured. Mrs. Teixeira had discussed with Sylva the possible purchase by her of the Corvair but had not reached any agreement with him as to such purchase. Her general plan was to purchase the Corvair if Sylva did not return within a year and if she sold some real property which she owned. After Sylva's departure, Mrs. Teixeira made some monthly payments on the car but made no payments to Sylva and made to effort to communicate with him about the car. On one occasion Mrs. Teixeira inquired of General Motors Acceptance Corporation about having the registration of the Corvair transferred to her and was informed Sylva's signature would be required. No other effort was made by her to procure transfer to her of the registration of the Corvair.

The District Court held on the undisputed facts that the Corvair was neither an "owned" automobile, nor an "unowned" automobile not furnished for regular use of the appellants, and entered judgment for Globe.

On this appeal appellants contend that the District Court erred:

1. In holding that Mrs. Teixeira was not the "owner" of the Corvair automobile at the time of the accident, within the meaning of the insurance policy;

2. In holding that the Corvair automobile was excluded from insurance coverage because it was a non-owned automobile furnished for appellant's regular use;

3. In granting a summary judgment on the ground that there existed no genuine issue as to a material fact; and

4. In denying the right to trial by jury.

On oral argument before us, counsel for the appellant conceded that he had waived, in the District Court, the right of trial by jury, and withdrew the specification of error relating to the same.

We have carefully examined the record in this case and are in complete agreement with the District Court that there exists no genuine issue as to any material fact in the case.

We first consider appellants' contention that the District Court erred "that Mrs. Teixeira was not the 'owner' of the Corvair automobile at the time of the accident within the meaning of the insurance policy." As above noted, Globe is obligated under the policy to pay, on behalf of the insured, all sums up to policy limits for which the insured shall become legally liable to pay as damages for bodily injury or death sustained by any person arising out of the "ownership, maintenance or use of the owned automobile, or any non-owned automobile," and to defend any suit seeking such damages which are payable under the terms of the policy.

Appellants contend that the Corvair automobile was an automobile owned by Mrs. Teixeira within the meaning of the policy. Such contention is founded mainly upon the definition of the word "owner" contained in Section 160–1 Part I, Chapter 160 of the Revised Laws of Hawaii, 1955, dealing with Motor Vehicles. This section in pertinent part provides:

"PART I. REGISTRATION OF VEHICLES

"§ 160–1. Definitions. As used in this part:

" * * *

" 'Owner' means a person having the lawful use or control or the right to the use or control of a motor vehicle under a lease or otherwise for a period of ten or more successive days;

" 'Legal owner' means a person who holds the legal title to a motor vehicle or a mortgage thereon;

" * * * *"

It is argued that since Mrs. Teixeira had the lawful use or control

or the right to the use or control of the Corvair automobile under a lease or otherwise for a period of ten or more successive days, she was the owner thereof under the statutory definition above quoted, and that the statutory definition controls in construing the meaning of the words "owned automobile" appearing in the policy. While it might be conceded that Mrs. Teixeira was the owner of said automobile within the statutory definition above quoted for purposes of the application of the Motor Vehicle Act of which the definition is a part, we are unable to agree that the statutory definition of "owner" fixes the meaning of the words "owned automobile" appearing in the policy. An insurance policy like any other contract is subject to certain rules of construction. The definition of an "owned automobile" appearing in the policy defines the same in pertinent part as:

"a private passenger, * * * automobile * * * owned by the named insured, * * *."

■ It appears to be well-settled that words or terms in an insurance policy, like the words or terms used in any other contract, are to be construed according to their plain, ordinary and accepted sense in the common speech of man unless it appears from the policy that a different meaning is intended. Reliance Insurance Company v. Jones, 296 F.2d 71, 94 A.L.R.2d 217 (10th Cir. 1961); Yoshida v. Liberty Mutual Insurance Co., 240 F.2d 824 (9th Cir. 1957); Oil Base, Inc. v. Transport Indemnity Co., 143 Cal. App.2d 453, 299 P.2d 952 (1956). In Oil Base, Inc., supra, the court held that the word "owner" as applied to motor vehicles is commonly understood to designate the person in whom title is vested either as a legal owner or as a registered owner.

In Yoshida supra, it was held that the common understanding of the words "owner" and "own" with respect to automotive vehicles includes the person entitled to possession of the vehicle, as the purchaser under a conditional sale contract.

We are aware of no decision of a reviewing court which has extended the usual and ordinary meaning of the definition of the words "owned automobile" which appear in the insurance policy in the instant case to include such a tenuous relationship as existed between Mrs. Teixeira and the Corvair automobile. Such extension would bring within the protection of the policy unlimited risks arising from the use by, or with the consent, of, the insured of motor vehicles belonging to others temporarily left in the care or custody of the insured and for which protection the insurance comany would receive no premiums. To construe the policy in accordance with the appellants' contention would, in our view, do violence to the proper construction of the policy and would mean the imposition by this court of a contract into which the contracting parties never entered.

■ We are reinforced in the views expressed above by the fact that the District Judge long familiar with the law of Hawaii expressed similar views in reaching his decision in favor of the appellee. The District Court did not err in holding that Mrs. Teixeira was not the "owner" of the Corvair automobile at the time of the accident within the meaning of the insurance policy.

Finally, we consider appellants' contention that the District Court erred in holding that the Corvair automobile was excluded from insurance coverage because it was a non-owned automobile furnished for appellants' regular use.

The insurance policy affords coverage for liability arising out of the use of "non-owned" automobiles "not owned by or furnished for the regular use of either the named insured or any relative, other than a temporary substitute automobile;". It is undisputed that the Corvair automobile was regularly used by the Teixeira family on a daily basis from the time of Sylva's departure until the time of the accident. Appellants contend that the word "not" in the above-quoted provision of the policy applies only to the word "owned" therein, and not to the words "or furnished for the regular use

of either the named insured or any relative".

It is appellants' position that the provision in the policy in question should be construed as though the policy defined a "non-owned" automobile as:

"(a) an automobile or trailer not owned by the named insured or any relative; or

"(b) an automobile or trailer furnished for the regular use of either the named insured or any relative, other than a temporary substitute automobile."

If the definition be so interpreted, appellants contend that the policy covers said Corvair automobile because it is not owned by the insured or any relative, and was furnished for the regular use of either the insured or any relative, and it was other than a temporary substitute automobile.

It is our view that such construction or interpretation does violence to the meaning of the provision of the policy and the plain intent of the parties. The policy extends coverage to a private passenger automobile owned by the named insured and includes a temporary substitute automobile. A temporary substitute automobile is one not owned by the named insured while temporarily used as a substitute for the owned automobile when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction. Thus the policy evidences an intent not to grant unlimited coverage for a non-owned automobile unless it be a temporary substitute automobile. If the policy extends coverage to a non-owned automobile furnished for the regular use of the named insured or any relative, other than a temporary substitute automobile, the effect would be to render meaningless that part of the definition of "non-owned" automobiles reading:

"or furnished for the regular use of either the named insured or other relative, other than a temporary substitute automobile"

since all automobiles coming within its purview would already be included in that part of the definition of "non-owned" automobile which reads:

"An automobile not owned by the named insured or any relative",

as well as rendering meaningless the "temporary substitute automobile" provision since a non-owned automobile under the non-owned automobile definition would extend coverage to automobiles falling in such classification.

■ The District Court did not err in holding that the Corvair automobile was excluded from insurance coverage because it was a non-owned automobile furnished for appellants' regular use.

The judgment of the District Court is affirmed.