VICKIE J. SPULAK, NOW KNOWN AS VICKIE J. MAW,
DOING BUSINESS AS BROADWAY CAFE & LOUNGE, APPELLANT,
V. TOWER INSURANCE COMPANY, INC.,
A WISCONSIN CORPORATION, ET AL., APPELLEES.
559 N.W.2d 197

Filed February 21, 1997.    No. S-94-1166.

Denzel R. Busick and Kent A. Hadenfeldt, of Luebs, Leininger, Smith, Busick & Johnson, for appellant.

Eric L. Klanderud, of Walentine, O'Toole, McQuillan & Gordon, for appellee Tower Insurance Co.

CAPORALE, WRIGHT, and CONNOLLY, JJ., and FLOWERS, D.J., and BOSLAUGH, J., Retired.

WRIGHT, J.

Vickie J. Spulak, now known as Vickie J. Maw (Maw), sued Tower Insurance Company, Inc. (Tower), for breach of an insurance contract. The jury returned a verdict for Tower, and Maw appeals.

## SCOPE OF REVIEW

When reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling. *Heins v. Webster County*, 250 Neb. 750, 552 N.W.2d 51 (1996); *Goolsby v. Anderson*, 250 Neb. 306, 549 N.W.2d 153 (1996).

## FACTS

Around November or December 1990, an insurance agent soliciting business for Tower offered to give a quote on insurance for the Broadway Cafe & Lounge, which was owned by Maw. The agent looked at the property and submitted a quote to Frank Spulak (Spulak), who was Maw's husband at that time. Spulak advised Maw to purchase the insurance, and Tower subsequently issued a policy of insurance to "Vickie J. Spulak DBA Broadway Cafe & Lounge," which covered the period of December 11, 1990, to December 11, 1991. The policy insured the business against several perils, including loss by fire.

On January 16, 1991, a fire occurred at the Broadway Cafe & Lounge. Maw filed a proof of loss with Tower and made a claim for damages. Tower denied the claim, and Maw sued Tower for breach of contract.

As an affirmative defense, Tower alleged, inter alia, that the fire was intentionally set by Spulak, who was still Maw's hus-

band at the time of the fire. Tower asserted that Spulak was a partner, employee, and agent of Maw's and that, under the policy, losses due to dishonest or criminal acts of a partner, agent, or employee were excluded.

On November 3, 1993, Maw filed a motion for summary judgment, which was heard on February 4, 1994. The motion was overruled on February 25. On the first day of the trial, September 12, Maw made a motion to demur ore tenus. A demurrer ore tenus was later filed with the court on September 20. Maw alleged that Tower failed to state any legally cognizable defenses because (1) Tower cannot apply the partnership exclusion without first having reformed the insurance contract to state that the named insured is a partnership and (2) under the statutes of Nebraska, the relevant exclusion is not valid. The district court denied the demurrer ore tenus.

At the close of her case, Maw made a motion for directed verdict and renewed her motion for summary judgment and her demurrer ore tenus on the same grounds. These motions were denied. Again, when Tower rested, Maw renewed her motion for directed verdict, motion for summary judgment, and demurrer ore tenus, which the court denied.

Thereafter, Maw presented rebuttal evidence, and Tower presented evidence on surrebuttal. Maw did not renew any of her motions at the close of her rebuttal or at the close of Tower's surrebuttal, which was the end of all the evidence.

On September 20, 1994, the jury returned a verdict in favor of Tower. Following the jury verdict, Maw moved the court for a judgment notwithstanding the verdict or, in the alternative, a new trial. On November 18, the district court overruled the motion for new trial, and Maw appealed.

## ASSIGNMENTS OF ERROR

Maw claims the district court erred (1) in failing to sustain her motion for summary judgment, demurrer ore tenus, motions for directed verdict, and motion for judgment notwithstanding the verdict or, in the alternative, motion for new trial; (2) in failing to declare that the insurance contract was inconsistent with the 1943 Standard Fire Insurance Policy of the State of New York and the applicable statutes of the State of Nebraska,

thereby rendering Tower's affirmative defense invalid as a matter of law; (3) in failing to rule that the designation of the named insured in the policy should be reformed to designate a partnership as the insured, as a prerequisite to Tower's asserting as an affirmative defense that the policy excluded coverage for dishonest acts of a partner in the insured business; (4) in failing to declare as a matter of law that the insurance contract between Maw and Tower was ambiguous, requiring a construction of the contract in favor of Maw and affording coverage; (5) in sustaining Tower's oral motion in limine preventing Maw's counsel from discussing the pertinent provisions of the insurance policy, despite the fact that the policy had been admitted into evidence without objection or limitation; and (6) in failing to give proposed instructions tendered by Maw which would have fully instructed the jury on the law regarding partnership and agency.

## ANALYSIS

Maw's first argument is essentially that the policy exclusion relied upon by Tower as an affirmative defense was not validly included within the policy of insurance and that, accordingly, the court should have sustained Maw's demurrer ore tenus, motions for directed verdict, renewed motion for summary judgment, or motion for judgment notwithstanding the verdict. We first address the motions for directed verdict, renewed motion for summary judgment, and motion for judgment notwithstanding the verdict.

A directed verdict is proper only where reasonable minds cannot differ and can draw but one conclusion from the evidence, where an issue should be decided as a matter of law. *World Radio Labs. v. Coopers & Lybrand, ante* p. 261, 557 N.W.2d 1 (1996). A party may waive or abandon a motion for the direction of a verdict in his favor by acts inconsistent with such motion. 89 C.J.S. *Trial* § 668 (1955) (citing *Ballard v. Ballard*, 226 Iowa 699, 285 N.W. 165 (1939). Thus, we have long held that a defendant who moves for a directed verdict at the close of the plaintiff's evidence and, upon the overruling of such motion, proceeds with trial and introduces evidence waives any error in the ruling on the motion. *Farmers &*

*Merchants Bank v. Grams*, 250 Neb. 191, 548 N.W.2d 764 (1996).

At the close of Tower's case, Maw moved for a directed verdict and then proceeded to offer considerable rebuttal evidence. We have not previously addressed whether a plaintiff who moves for a directed verdict at the close of the defendant's evidence (which motion is overruled) and who then proceeds to introduce rebuttal evidence waives any error on the motion for directed verdict. We see no reason not to apply the same rule to the plaintiff that we apply to the defendant. A plaintiff who moves for a directed verdict at the close of the defendant's evidence and, upon the overruling of such motion, proceeds to introduce rebuttal evidence waives any error in the ruling on the motion. See, e.g., *Cullender v. Doyal*, 44 N.M. 491, 105 P.2d 326 (1940) (holding that if it was error for trial court to deny plaintiff's motion for directed verdict, such error was waived by plaintiff, who thereafter introduced rebuttal testimony). Thus, we conclude that Maw waived any error on the motion for directed verdict by proceeding to offer rebuttal testimony. The motion for directed verdict was not renewed at the close of all the evidence. Therefore, the issue of the correctness of the district court's ruling on Maw's motions for directed verdict is not before us.

Regarding Maw's renewed motion for summary judgment, a renewed motion for summary judgment made during the course of trial and before the jury verdict is treated as a motion for directed verdict. See, e.g., *Graham v. Morrison*, 71 N.C. App. 743, 323 S.E.2d 385 (1984); *Johnsrud v. Tri-State Sales, Inc.*, 353 N.W.2d 255 (Minn. App. 1984). Maw offered rebuttal evidence following this motion for summary judgment and, therefore, waived the issue of whether the district court erred in denying it. Similarly, Maw did not renew the motion for summary judgment at the close of all the evidence.

Maw's motion for judgment notwithstanding the verdict likewise was not preserved for our review. Neb. Rev. Stat. § 25-1315.02 (Reissue 1995) provides that a motion for directed verdict made at the close of all the evidence is a prerequisite to a motion for judgment notwithstanding the verdict. *Palmtag v. Gartner Constr. Co.*, 245 Neb. 405, 513 N.W.2d 495 (1994).

Although Maw moved for a directed verdict when Tower rested, she did not renew the motion at the close of all the evidence, after Maw's rebuttal and Tower's surrebuttal. A motion for judgment notwithstanding the verdict may not properly be sustained in the absence of a motion for directed verdict made at the close of all the evidence. *Id.*

We next address the demurrer ore tenus. A demurrer ore tenus is an appropriate method to challenge a defective pleading and to object to the introduction of evidence in support of the defective pleading. See *Newman Grove Creamery Co. v. Deaver*, 208 Neb. 178, 302 N.W.2d 697 (1981). In *Newman Grove Creamery Co.*, the defendants asserted that the court erred in granting the plaintiff's demurrer ore tenus as to the defendants' answer alleging duress in the execution of a promissory note from the defendants to the plaintiff. At trial, the plaintiff offered the note in evidence, as well as other evidence, and rested. The plaintiff then demurred ore tenus to the defendants' answer for the reason that it failed to state facts which constituted an affirmative defense to the action. The court sustained the demurrer. On appeal, the defendants argued the demurrer ore tenus was not timely and, therefore, should not have been sustained.

We stated that generally a demurrer ore tenus is considered an objection to the introduction of evidence, rather than to a pleading. As to the timeliness, we concluded that it was doubtful the demurrer ore tenus was included in the court's order requiring that motions be filed 10 days prior to trial, and we noted that an objection to the admission of evidence on the grounds that a petition does not state a cause of action may be made at any time during trial. We stated that it was well established that a demurrer ore tenus was a permissible practice and that if a pleading to which the demurrer is addressed is totally defective, it is error to admit any evidence under such pleading. *Id.* (citing *Dickinson v. Lawson*, 125 Neb. 646, 251 N.W. 656 (1933)).

In denying Maw's claim, Tower relied upon an exclusion found in the commercial property portion of the policy under the caption "Causes of Loss - Special Form." Exclusion B(2) provides:

We will not pay for loss or damage caused by or resulting from any of the following:

. . . .

h. Dishonest or criminal act by you, any of your partners, employees, directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose:

(1) Acting alone or in collusion with others; or

(2) Whether or not occurring during the hours of employment.

This exclusion does not apply to acts of destruction by your employees; but theft by employees is not covered.

Maw's position is that the foregoing exclusion is not contained in the 1943 Standard Fire Insurance Policy of the State of New York or otherwise approved by the director of the Department of Insurance for the State of Nebraska, as required by Neb. Rev. Stat. § 44-501 (Reissue 1993). Therefore, Maw claims the exclusionary provision was not a viable affirmative defense to the petition. Section 44-501 provides:

No policy or contract of fire and lightning insurance . . . shall be made, issued, used, or delivered by any insurer or by any agent or representative thereof on property within this state other than such as shall conform as nearly as practicable to blanks, size of type, context, provisions, agreements, and conditions with the 1943 Standard Fire Insurance Policy of the State of New York . . . and no other or different provision, agreement, condition, or clause shall in any manner be made a part of such contract or policy or be endorsed thereon or delivered therewith except as provided in subdivisions (1) through (11) of this section.

Tower argues that its policy is valid because, under § 44-501(11), the Director of Insurance may approve any form of policy with variations in terms and conditions from the standard policy. Tower contends there is an issue of fact as to whether the exclusion was approved by the Director of Insurance under § 44-501(11). In support of such alleged issue of fact, Tower claims that since it is a reputable company, it would have done everything necessary to conform to Nebraska law and, therefore, the provision would have been approved by

the Director of Insurance. In sum, Tower argues that its position as a reputable company creates a reasonable inference that the exclusion has been approved by the Director of Insurance.

The insurer bears the burden of establishing as an affirmative defense that an event falls within an exclusionary clause. See *Amco Ins. Co. v. Norton*, 243 Neb. 444, 500 N.W.2d 542 (1993). Once Maw presented evidence, through introduction of the 1943 Standard Fire Insurance Policy of the State of New York, that the exclusion in question failed to comply with § 44-501, Tower had the burden to show that the exclusion was approved by the Director of Insurance. See *Chism v. Campbell*, 250 Neb. 921, 553 N.W.2d 741 (1996) (movant for summary judgment makes prima facie case by producing enough evidence to demonstrate that movant is entitled to judgment if evidence were uncontroverted at trial; at that point, burden of producing evidence shifts to party opposing motion).

Regarding the inferences that may be deduced, Tower is entitled to the benefit of all proper inferences deducible from the relevant evidence. See *McWhirt v. Heavey*, 250 Neb. 536, 550 N.W.2d 327 (1996). Section 44-501(11) states that "[t]he Director of Insurance may approve any form of policy with variations in terms and conditions from the standard policy provided for in this section." However, we do not agree with Tower's position that because it was necessary to have its policy approved by the Director of Insurance for it to conform to Nebraska law, it may reasonably be inferred that Tower did so.

A demurrer ore tenus is considered as an objection to the introduction of evidence to support a defective pleading. *Newman Grove Creamery Co. v. Deaver*, 208 Neb. 178, 302 N.W.2d 697 (1981). Tower's amended answer did not allege that the exclusion was a valid exception to § 44-501 as having been approved by the Director of Insurance. Nor was Tower entitled to the inference that the exclusion had, in fact, been so approved. Therefore, Tower's defense was limited by the provisions of the policy as written in conformity with the 1943 Standard Fire Insurance Policy of the State of New York. See *Insurance Co. of North America v. County of Hall*, 188 Neb. 609, 198 N.W.2d 490 (1972).

The only applicable provision of the 1943 Standard Fire Insurance Policy of the State of New York excludes coverage "for loss occurring (a) while the hazard is increased by any means within the control or knowledge of the insured . . . ." Maw was the only named insured, and it was not alleged by Tower that the fire hazard was increased by any means within her control or knowledge. Thus, it is clear that Tower's amended answer failed to state a viable affirmative defense, and Maw's demurrer ore tenus should have been sustained.

## CONCLUSION

This brings us to the ultimate question: To what relief is Maw entitled? Obviously, Tower did not ask for leave to further amend its answer, since the demurrer ore tenus was denied. Therefore, we consider the situation from the reverse angle. Had the demurrer properly been sustained, the district court would have granted leave to further amend the answer. It is generally an abuse of discretion to grant a demurrer without leave to amend where there is a reasonable possibility that the defect can be cured by amendment. See *Hitzemann v. Adam*, 246 Neb. 201, 518 N.W.2d 102 (1994).

The record does not disclose whether the exclusion at issue was in fact approved by the Director of Insurance. That fact is not before us, and we do not consider it. However, it is apparent that Tower could plead such a fact in an amended answer, which would correct the defect alleged by Maw's demurrer ore tenus. Accordingly, the judgment of the district court is reversed, and the cause is remanded for a new trial. Having reversed the judgment and remanded the cause for a new trial, we find it unnecessary to address Maw's other assignments of error.

REVERSED AND REMANDED FOR A NEW TRIAL.

WHITE, C.J., participating on briefs.

GERRARD, J., not participating.