JoAnn Brandon, Personal Representative of the Estate of
Teena Brandon, deceased, appellant, v. The County of
Richardson, Nebraska, and Charles B. Laux, Richardson
County Sheriff, appellees.

566 N.W.2d 776

Filed July 25, 1997.  No. S-95-1019.

James M. Kelley and Michael J. Hansen, of Berry, Kelley, Hansen & Burt, for appellant.

Richard L. Boucher and, on brief, Tamra L. Walz, of Boucher Law Firm, for appellees.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.

PER CURIAM.

Appellant, JoAnn Brandon (Brandon), as personal representative of the estate of Teena Brandon, deceased, filed suit in the district court for Richardson County against Richardson County and Sheriff Charles B. Laux for breaching their duty to protect Teena Brandon (victim) and thus causing her wrongful death. The district court dismissed Brandon's second amended petition based on Richardson County and Laux's demurrer alleging that the petition did not set forth facts sufficient to allege a cause of action. We reverse, and remand with direction.

## BACKGROUND

The factual context of the damage claim involved the death of the victim. Brandon's allegations, which must be accepted as true facts for the purposes of a demurrer, are set out in her second amended petition. On December 25, 1993, John Lotter and Marvin Nissen forcibly abducted, imprisoned, assaulted, and raped the victim. Lotter and Nissen then threatened the victim that if she informed anyone as to what they did to her, they would " 'silence her permanently.' " The victim escaped from the imprisonment imposed upon her by Lotter and Nissen and sought aid from Laux and his agents. On that same day, the victim told Laux she had been raped, imprisoned, and threatened with death if she revealed what had happened; identified Lotter and Nissen as the perpetrators of the crimes committed against her; and stated that she would sign all appropriate complaints and would testify against them. Laux represented to the victim that the reason for the interview with her was to get facts for the arrest and prosecution of Lotter and Nissen.

Following the interview, Laux directed his deputy, Tom Olberding, to pursue the investigation. Olberding completed his investigation, retrieved several items of physical evidence at the rape scene, and told Laux that the physical evidence corroborated the victim's statement and that he wanted to arrest Lotter and Nissen. Laux did not arrest Lotter or Nissen, and he did not advise the victim of his decision not to do so. Instead, Laux delegated other parts of the investigation to the Falls City Police Department, which detained Lotter and Nissen for questioning. The victim was not informed of Laux's decision not to arrest Lotter and Nissen, and she believed that Lotter and Nissen would be arrested; in reliance on the expectation that Lotter and Nissen would be arrested, she remained in Richardson County instead of returning to Lincoln despite the threat on her life. The victim was shot and killed by Lotter and Nissen on December 31, 1993.

The second amended petition alleges that Laux breached his common-law and statutory duties to the victim by his failure and refusal to arrest Lotter and Nissen. Brandon also alleges that Laux further breached his common-law duty to the victim by his failure and refusal to inform the victim of his decision not to arrest Lotter and Nissen. Brandon's second amended petition alleges in paragraph 24 that the victim, relying on the expectation that "Laux would execute his common law and statutory duties," remained in Richardson County despite the threat on her life by Lotter and Nissen, which threat was known to Laux. In paragraph 26, Brandon then alleges that the victim told her that believing Lotter and Nissen were to be arrested by Laux, and in reliance thereon, she planned to stay in the area and return to Lincoln January 3, 1994.

Brandon originally made a claim under the Political Subdivisions Tort Claims Act. The 6-month period for Richardson County and Laux to respond to said claim expired without a response. Brandon, pursuant to Neb. Rev. Stat. § 13-906 (Reissue 1991), withdrew the above claim. Brandon filed a petition, seeking damages for the wrongful death of her daughter, the victim, pursuant to Neb. Rev. Stat. §§ 30-809 and 30-810 (Reissue 1995), and for the injuries and damages sustained by the victim prior to her death. Richardson County and Laux filed

a demurrer, which was sustained. Brandon filed an amended petition in which she added a fourth cause of action, that of intentional infliction of emotional distress. Richardson County and Laux filed another demurrer, which was sustained. Brandon was given leave to file a second amended petition with regard to her first, second, and third causes of action, but her fourth cause of action, for intentional infliction of emotional distress, was dismissed.

Brandon filed a second amended petition, alleging causes of action based on wrongful death, predeath injuries and damages, and funeral and burial expenses. She again alleged a cause of action based on intentional infliction of emotional distress.

Richardson County and Laux demurred to the second amended petition, arguing that the second amended petition did not state facts sufficient to constitute a cause of action. The district court sustained the demurrer, denied further leave to amend, and dismissed Brandon's case. From this order, Brandon appeals.

## ASSIGNMENT OF ERROR

Brandon assigns as error the district court's determination that her second amended petition did not state a cause of action.

## STANDARD OF REVIEW

When reviewing an order sustaining a demurrer, an appellate court accepts the truth of the facts which are well pled, together with the proper and reasonable inferences of law and fact which may be drawn therefrom, but does not accept as true the conclusions of the pleader. *PSB Credit Servs. v. Rich*, 251 Neb. 474, 558 N.W.2d 295 (1997); *Baltensperger v. Wellensiek*, 250 Neb. 938, 554 N.W.2d 137 (1996); *Crider v. Bayard City Schools*, 250 Neb. 775, 553 N.W.2d 147 (1996).

## ANALYSIS

A negligence action brought under the Political Subdivisions Tort Claims Act has the same elements as a negligence action against an individual, i.e., duty, breach of duty, causation, and damages. *Hamilton v. City of Omaha*, 243 Neb. 253, 498 N.W.2d 555 (1993). Because Brandon's action for wrongful death sounds in negligence, to determine whether her petition

states facts sufficient to constitute a cause of action, it is necessary to examine whether specific facts are enumerated which would serve to establish that Richardson County and Laux owed a duty to the victim, that Richardson County and Laux breached that duty, and that the breach was the proximate cause of the victim's damages. See *id.*

In *Hamilton*, the plaintiff alleged that she had relied upon a police officer's assurances and remained in her apartment following an attack by her ex-husband. The plaintiff alleged that she requested a " 'special watch number' " because she feared for her safety. *Id.* at 255, 498 N.W.2d at 558. She further alleged that the officer stated she would not need a special watch number and that he would be on duty and in the immediate area to protect her. The plaintiff's ex-husband returned to her residence approximately 20 minutes later. At that time, Hamilton called the 911 emergency service number to report the attack in progress. She was assaulted with a tire iron by her ex-husband as she attempted to get help.

The plaintiff alleged that the officer was negligent in failing to protect her from her assailant after affirmatively assuring her he would protect her and in failing to be available to provide protection to her after assuring her he would do so. She further alleged that she stayed at her residence in reliance on this assurance, although no allegation existed of an alternative she would have pursued absent such reliance. The defendants, the officer and the city, demurred on the ground that the petition failed to state a cause of action. The demurrer was sustained by the lower court. This court found that the petition relied "on bare legal conclusions and generalizations and lack[ed] any allegations of specific acts or omissions which would establish a duty as well as a breach of that duty and proximate causation." (Emphasis omitted.) *Id.* at 264, 498 N.W.2d at 562-63.

In *Hamilton*, we noted that over 100 years ago, the U.S. Supreme Court held that law enforcement officials may not be held liable for failure to protect individual citizens from harm caused by criminal conduct. See *South et al. v. State of Maryland, Use of Pottle*, 59 U.S. (18 How.) 396, 15 L. Ed. 433 (1855). We also recognized that such a rule is not absolute and that there are exceptions. Liability is established if police have specifically

undertaken to protect a particular individual and the individual has specifically relied upon the undertaking. *Morgan v. District of Columbia*, 468 A.2d 1306 (D.C. 1983). Such a duty to provide police services arises when there is some form of privity—a "special relationship"—between the police department and the victim that sets the victim apart from the general public and there are explicit assurances of protection that give rise to reliance on the part of the victim.

We recognize that there are situations that provide exceptions to the no-duty rule: (1) where individuals who have aided law enforcement as informers or witnesses are to be protected or (2) where the police have expressly promised to protect specific individuals from precise harm. These two situations were discussed at length in *Morgan*. The court in *Morgan* recognized that a special relationship undoubtedly exists where an individual assists law enforcement officials in the performance of their duties.

We conclude that Brandon has stated facts sufficient to qualify for an exception to the no-duty rule because the victim witnessed a crime and agreed to aid the police. A special relationship was created when the victim went to law enforcement officials and offered to testify and aid in the prosecution of Lotter and Nissen. The fact that she was the victim of the crime does not change this relationship. The victim was abducted, imprisoned, and raped. She offered to collaborate with the police in the arrest and prosecution of the criminals, and Laux's office was aware of the danger to the victim. Upon further investigation, Olberding determined that the physical evidence at the rape scene corroborated the victim's statement. Olberding wanted to arrest Lotter and Nissen, but he was not permitted to do so. For purposes of the demurrer, these facts, if true, qualified the victim for an exception to the no-duty rule.

The district court erred in sustaining Richardson County and Laux's demurrer to Brandon's causes of action Nos. 1, 2, and 3.

The threshold question on the claim for intentional infliction of emotional distress is whether this cause of action survives the death of the victim. In *Nelson v. Dolan*, 230 Neb. 848, 434 N.W.2d 25 (1989), this court held that a decedent's estate may recover as an element of damages for decedent's conscious

pain, suffering, and mental anguish resulting from the apprehension and fear of impending death. We find the reasoning in *Nelson* persuasive and see no reason why it would not also apply in this case; therefore, the claim in this case for intentional infliction of emotional distress would also survive the death of the victim. Brandon claims intentional infliction of emotional distress against the County of Richardson and Laux. To state a cause of action for intentional infliction of emotional distress, a plaintiff must allege facts showing (1) that there has been intentional or reckless conduct, (2) that the conduct was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and is to be regarded as atrocious and utterly intolerable in a civilized community, and (3) that the conduct caused emotional distress so severe that no reasonable person should be expected to endure it. *Reavis v. Slominski*, 250 Neb. 711, 551 N.W.2d 528 (1996); *Schieffer v. Catholic Archdiocese of Omaha*, 244 Neb. 715, 508 N.W.2d 907 (1993); *Nichols v. Busse*, 243 Neb. 811, 503 N.W.2d 173 (1993).

It is not clear from the petition that any such severe emotional distress occurred. In fact, the only specific allegation states: "Laux stated that [the victim's] absence from a scheduled second interview reflected poorly on her credibility as to the truthfulness of the reported sexual and physical assaults upon her by Lotter and Nissen." This allegation does not rise to the level of severe distress needed to allege intentional infliction of emotional distress. It is generally an abuse of discretion, however, to grant a demurrer without leave to amend where there is a reasonable possibility that the defect can be cured by amendment. *Spulak v. Tower Ins. Co.*, 251 Neb. 784, 559 N.W.2d 197 (1997); *Fox v. Metromail of Delaware*, 249 Neb. 610, 544 N.W.2d 833 (1996). Therefore, Brandon should have been given leave to amend her petition with regard to the emotional distress claim.

## CONCLUSION

We reverse the trial court's order sustaining the demurrer to Brandon's second amended petition as to causes of action Nos. 1, 2, and 3 and remand the cause for further proceedings. With regard to cause of action No. 4, we reverse the trial court's fail-

ure to allow Brandon to amend her second amended petition and direct the trial court to allow an amendment.

REVERSED AND REMANDED WITH DIRECTION.

CAPORALE, J., concurring.

I agree that the operative petition states a cause of action both for the breach of the duty to protect the victim, Teena Brandon, and for intentionally inflicting emotional distress upon her. I write separately because in my view the allegations as to the conduct of the defendants, Sheriff Charles B. Laux and the County of Richardson, are more compelling in asserting a breach of the duty to protect than are the allegations concerning the assistance that the victim promised in the prosecution of the perpetrators, John Lotter and Marvin Nissen.

The victim avers she complained of her abduction, assault, and rape to Laux and his agents and reported as well the perpetrators' threat to " 'silence her permanently' " were she to inform anyone as to what was done to her. The petition further asserts that the investigation corroborated the victim's complaint; that Laux nonetheless decided not to arrest the perpetrators; that notwithstanding Laux's knowledge of the perpetrators' threat, he told them of the victim's complaint; and that he failed to make the victim aware that the perpetrators had been questioned but had not been arrested.

I submit that under those allegations, Laux violated his duty to protect the victim regardless of her agreement to assist in the prosecution. Notwithstanding his knowledge of the threat to the victim's life, Laux informed the perpetrators of the victim's complaint; it seems to me that the moment the perpetrators were made so aware, Laux acquired a duty to protect the victim. If the allegations are proved, by talking with the perpetrators but not arresting them, Laux laid an essential link in the chain that led to the victim's death.